# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **MELINDA MARIE WEDDLE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:21-CV-998-Y** |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Melinda Marie Weddle ("Weddle") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On July 16, 2019, Weddle applied for DIB, alleging that her disability began on January 10, 2019. (Transcript ("Tr.") at 25; *see* Tr. 169-70.) Weddle's application was both denied initially and on reconsideration. (Tr. 25; *see* Tr. 73-95, 99-103.) Weddle then requested a hearing before an administrative law judge ("ALJ"). (Tr. 25; *see* Tr. 104-05.) On January 4, 2021, the ALJ held a telephone hearing, and, on February 3, 2021, the ALJ found that Weddle was not disabled within the meaning of the SSA. (Tr. 22-33; *see* Tr. 38-72.)

1

Weddle then filed a request for review of the ALJ's decision to the Appeals Council. (Tr. 166-68, 245-50.) On July 13, 2021, the Appeals Council denied Weddle's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Weddle presents the following issues:

1. Whether the ALJ properly considered all the functionally limiting effects of the Plaintiff's severe impairments in determining the Plaintiff's RFC; and

2. Whether the ALJ improperly substituted her own medical opinion in determining the Plaintiff's RFC.

(Plaintiff's Brief ("Pl.'s Br.") at 1-2.)

### IV. ALJ DECISION

In a decision dated February 3, 2021, the ALJ concluded that Weddle was not disabled within the meaning of the SSA. (Tr. 22-33.) At Step One, the ALJ found that Weddle had not engaged in substantial gainful activity since her alleged onset date of January 10, 2019. (Tr. 28.) In addition, the ALJ found that Weddle met the insured status requirements of the SSA through December 31, 2023. (Tr. 27.) At Step Two, the ALJ found that Weddle had the following severe impairments: "thyroid disorder, obesity, emphysema, hypogammaglobulinemia, Raynaud's syndrome, lupus vasculitis, narcolepsy, bi-lateral knee disorder, anxiety disorder, and depressive disorder." (Tr. 28 (emphasis omitted).) Next, at Step Three, the ALJ determined that Weddle did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 28-29.) As to Weddle's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a) except that the claimant can never climb ladders/ropes/scaffolds, but can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and/or crawl. She can frequently handle or finger with both upper extremities. She must avoid concentrated exposure to temperature extremes, pulmonary irritants, and workplace hazards; whether due to anxiety and/or depression or side effects from medications or treatment, she can apply commonsense understanding to carry out detailed but uninvolved written or oral

4

instructions; can deal with problems involving a few concrete variables in or from standardized situations.

(Tr. 29-30 (emphasis omitted).)

At Step Four, the ALJ found that Weddle was unable to perform any past relevant work. (Tr. 32.) Subsequently, at Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Weddle could perform based on her age, education, work experience, and RFC. (Tr. 32-33.) Accordingly, the ALJ found that Weddle was not disabled as defined in the SSA from January 10, 2019, through February 3, 2021, the date of the ALJ's decision. (Tr. 33.)

## V. DISCUSSION

### A.    Inclusion of Limitations from Severe Impairments in RFC Determination

In her brief, Weddle argues that the ALJ erred by finding at Step Two that she had the severe impairments of hypogammaglobulinemia, Raynaud's syndrome, and narcolepsy but then, subsequently, failing to include any limitations in the RFC determination relating to such severe impairments. (Pl.'s Br. at 5-7.)

RFC is what an individual can still do despite her limitations.[2] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment,

---

[2] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

with both exertional and nonexertional[3] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making her decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial

---

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

### 1.    Hypogammaglobulinemia

Weddle first argues that the ALJ erred in including any functional limitations to account for her severe immunodeficiency disorder, hypogammaglobulinemia, and its corresponding treatment side-effects. Specifically, Weddle states:

> Hypogammaglobulinemia is an immunodeficiency disorder. Symptoms of an immunodeficiency disorder include infections that keep coming back or do not go away; poor response to treatment for infections; and delayed or incomplete recovery from illness. Individuals with decreased levels of IgA combined with low levels of certain IgG subclasses are likely to have problems involving the lungs, sinuses, ears, throat, and digestive tract.
>
> . . . [T]he Plaintiff testified that she is subject to recurrent infections and often runs fevers, which would require her to stay home from work when she has such infections (Tr. 50). Further, she receives infusions every 28 days and has headaches, and chills, and fevers for 3 to 5 days after each infusion (Tr. 48). The Acting Commissioner's ruling provides that the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment, including disruption to routine and side-effects of medication, must be considered in determining an individual's residual functional capacity (SSR 96-8p; *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)). The ALJ's RFC determination does not consider the frequency of the Plaintiff's infections, nor the side-effects of the treatment including fevers, and headaches, in determining the Plaintiff's ability to perform work-related activities.

(Pl.'s Br. at 5-6 (footnote omitted).)

As to her hypogammaglobulinemia, the ALJ in her decision stated that "[t]he claimant reported [to her medical provider] that her HqQvia infusions for her hypogammaglobulinemia were going well and that since beginning her Ig replacement therapy, the frequency of her infections had improved significantly." (Tr. 30; *see* Tr. 394.) The ALJ further stated:

> At her hearing, the claimant testified that she has experienced a number of immunodeficiency related issues, which have primarily limited her ability to work. She pointed out that she has also experienced repeated infections in her lungs and sinuses over the years. She stated that due to her right knee issues, she has mobility

problems. She indicated that she could only walk to the end of her driveway and back and required rest afterwards. She noted that she spent most days resting and not leaving her house.

After considering all evidence of record, the undersigned finds that the claimant's medically determinable impairments reasonably could be expected to cause some of the alleged symptoms. However, the undersigned evaluated the consistency of the claimant's reported symptoms as directed by 20 CFR 404.1529(c)(3) and Social Security Ruling 16-3p, and found several reasons why the claimant's allegations of debilitating symptoms are not consistent with the objective medical evidence and other evidence of record.

First, the claimant's medical treatment for knee pain was quite conservative in nature during the period under consideration and the available MRI scans show only mild issues. Moreover, she has experienced her other conditions for some time and her records clearly show that her symptoms are manageable by medication. She has testified that she is essentially restricted to the home and can only walk to the end of her driveway. However, these limitations are not explained by the overall record or supported by any restrictions imposed by her physicians.

In addition, the undersigned notes that she provides care to her two young children. . . .

Second, no treating or examining medical source has offered an opinion about the claimant's symptoms and their effects on the claimant's abilities to perform work activities, leaving the claimant's allegations uncorroborated.

(Tr. 31.)

In this case, it is clear that the ALJ was aware of and specifically discussed Weddle's hypogammaglobulinemia and corresponding functional limitations. However, based on the overall evidence in the record, the ALJ found that Weddle's immunodeficiency disorder and effects of her medications or treatment resulted in an RFC determination of being confined to sedentary work with some additional restrictions (whether due to "anxiety and/or depression or side effects from medications or treatment"), including: (1) avoiding concentrated exposure to pulmonary irritants; (2) applying commonsense understanding to carrying out detailed but uninvolved written or oral instructions; and (3) dealing with problems involving a few concrete variables in or from standardized situations. (Tr. 29-30 (emphasis added).) As indicated above

8

and noted by the ALJ, the record indicates that Weddle's hypogammaglobulinemia symptoms had improved and were manageable by medication and treatment. While Weddle may disagree with the ALJ's findings, there is substantial evidence in the record that supports the ALJ's RFC determination regarding Weddle's hypogammaglobulinemia and the effects of the medication and treatment for this impairment.

Moreover, to the extent there was any error, it would be harmless error as Weddle has failed to identify any evidence beyond her own speculation indicating how her hypogammaglobulinemia actually resulted in any further limitations beyond those found by the ALJ in the RFC determination. *See Mayeux v. Comm'r of Soc. Sec. Admin.*, No. 16-755-EWD, 2018 WL 297588, at *7 (M.D. La. Jan. 4, 2018) ("Plaintiff has failed to identify any evidence [beyond her own speculation] to support a finding that her [severe] obesity actually resulted in limitations precluding sedentary work."). Consequently, remand is not required.

### 2.    Raynaud's Syndrome

Weddle also argues that the ALJ's RFC determination does not properly accommodate for the severity of her Raynaud's syndrome. In support, Weddle specifically states:

> The ALJ found that Raynaud's syndrome significantly limits the Plaintiff's ability to perform work-related activities. Signs and symptoms of Raynaud's disease include cold fingers or toes; color changes in the skin in response to cold or stress; and a numb, prickly feeling or stinging pain upon warming or stress relief. During an attack of Raynaud's, affected areas of the skin usually first turn white, then they often turn blue and feel cold and numb, and as the area warms and circulation improves, the affected areas may turn red, throb, tingle, or swell. The Plaintiff has described symptoms fully consistent with the medical literature (Tr. 54-56). She testified that stress can cause episodes of Raynaud's syndrome affecting her feet and hands (Tr. 55). As noted above, this is also consistent with the known provoking factors for Raynaud's syndrome. The ALJ failed to consider interference with ability to function caused by attacks of Raynaud's syndrome in determining Ms. Weddle's RFC.

(Pl.'s Br. at 6-7 (footnote omitted).)

9

In this case, the ALJ, after finding that Weddle suffers from severe Raynaud's syndrome, does not, in the RFC determination section of her analysis, specifically mention such syndrome again by name. However, the ALJ does note, as stated above, that Weddle "has stated that she can play video games using her hands, can drive, and she acknowledged to one care provider that she regularly exercised." (Tr. 31 (internal citation omitted).) Moreover, the ALJ specifically found in the RFC determination that Weddle should be limited to sedentary work and was limited to frequently handling or fingering with both extremities (as opposed to constant), all limitations that appear to account for Raynaud's syndrome as a severe impairment. (Tr. 29-31.) Because the ALJ properly included functional limitations into the RFC determination that account for her Raynaud's syndrome, substantial evidence exists supporting the ALJ's RFC determination. Moreover, to the extent there was any error, it would be harmless error as Weddle has failed to identify any evidence beyond her own speculation indicating how her Reynaud's syndrome actually resulted in any further limitations beyond those found by the ALJ in the RFC determination. *See Mayeux*, 2018 WL 297588, at *7. Consequently, remand is not required as to the issue of Weddle's Reynaud's syndrome.

### 3.    Narcolepsy

In her brief, Weddle also argues that the ALJ failed to include functional limitations into her RFC determination to account for her severe impairment of narcolepsy. (Pl.'s Br. 7.) In support, Weddle states:

> Narcolepsy affects the brain's control of sleep and wakefulness. Symptoms include excessive daytime sleepiness, cataplexy, and sleep paralysis. The ALJ found that narcolepsy significantly limits the Plaintiff's ability to perform basic work activities. But the ALJ's RFC determination makes no apparent accommodation for symptoms of excessive daytime sleepiness, or cataplexy. Thus, having found that the condition limits the Plaintiff's functional ability, the ALJ failed to incorporate limitations consistent herewith.

(Pl.'s Br. at 7 (footnote omitted).)

In making her RFC determination, the ALJ noted, "In August 2019, the claimant explained to a care provider that her prescribed Adderall was not helping control her narcolepsy, as she could take the medication and then fall asleep." (Tr. 30.) In addition, as set forth above, the ALJ further stated, "Weddle has experienced her other conditions [besides knee pain] for some time and her records clearly show that her symptoms are manageable by medication." (Tr. 31.)

While the ALJ may have erred in not providing more explanation, any such error was harmless as the record clearly shows that, at Weddle's August 2019 visit with her medical provider, she was prescribed a different medicine, Provigil, for her narcolepsy and that, in January 2020, Weddle's medical provider noted that Weddle's ability to stay awake had improved with the use of Provigil. (Tr. 316, 785.) In addition, at multiple medical visits, Weddle was described by her care providers as alert and oriented, with a normal demeanor and intact judgment. (Tr. 316, 785, 705.) Moreover, in August 2020, one of Weddle's medical providers noted that a low dose of Provigil seemed to control her narcolepsy symptoms. (Tr. 757.)

Based on the foregoing, the ALJ's RFC determination is supported by substantial evidence that Weddle's narcolepsy symptoms are controlled by her Provigil prescription. Although the ALJ does not cite the specific instances that indicate Weddle was prescribed Provigil and its effect on her narcolepsy, the ALJ made her RFC determination "[a]fter considering all evidence of record." (Tr. 31.) Because substantial evidence is "more than a mere scintilla, but less than a preponderance," the ALJ's review of the entire record as well as noting that Weddle's conditions were manageable with medications is sufficient to constitute substantial evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993)). Moreover, to the extent there was any error, it would be harmless error as Weddle has

failed to identify any evidence beyond her own speculation indicating how her narcolepsy actually

resulted in any further limitations beyond those found by the ALJ in the RFC determination. *See*

*Mayeux*, 2018 WL 297588, at *7. Consequently, remand is not required as to the issue of Weddle's

narcolepsy.

### B.   RFC Determination

In her brief, Weddle also argues that the ALJ erred by improperly substituting her own

opinion in making the RFC determination for that of the medical opinion evidence of record. (Pl.'s

Br. at 7-10.) Specifically, citing to *Ripley*, *supra*, and several other cases, Weddle states: [4]

> The ALJ reported that she considered the assessments of the State Agency
> consultants and found them to be not generally persuasive, as the record shows
> more restrictions and limitations than were found by such consultants (Tr. 31-32).
> Further, the ALJ noted that "no treating or examining medical source has offered
> an opinion about the claimant's symptoms and their effects on the claimant's
> abilities to perform work activities…" (Tr. 31). Accordingly, as there is no treating
> or examining medical source opinion and as the ALJ rejected the opinions of the
> State Agency medical consultants, how did the ALJ derive the Plaintiff's RFC?
>
>       . . . .
>
> The ALJ found that both anxiety and depression are each severe
> impairments (Tr. 28). The ALJ then applied the psychiatric review technique to
> evaluate the Plaintiff's functional limitations in each of the 4 "paragraph B" criteria
> (Tr. 29). [5] But there is no assessment from any medical professional which would
> support the ALJ's conclusions as to the Plaintiff's functional limitations in each of
> these criteria.   Courts have reminded the Acting commissioner that opinions
> regarding the effects of mental impairments should be left for mental health
> professionals, not ALJs. *See Wilder v. Chater*, 64 F. 3d [sic] 335, 337 (7th Cir.
> 1995) (Posner, J.) ("[H]ealth professionals, in particular psychiatrists, not lawyers
> or judges, are the experts on [mental illness]"). As the Fifth Circuit recently

---

[4] The Court notes that Weddle also argues that the ALJ improperly substituted her own opinion for medical evidence regarding the physical RFC determination and Plaintiff's ability to use her hands for handling and fingering in a work setting. (Pl.'s Br. at 9.) While it appears that such limitations were included to account for Weddle's Raynaud's syndrome, as set forth above, upon remand, the ALJ should ensure that the mental and physical RFC determinations are supported by substantial evidence and do not violate *Ripley*, *supra*.

[5] "Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

observed, "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profund in a case involving a mental disability." *Salmond v. Berryhill*, 892 F.3d 812 (5th Cir. 2018) (citing *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)).

The ALJ has not referred to any medical evidence or non-medical evidence or medical opinion evidence which would support her determination as to the functionally limiting the [sic] effects of the Plaintiff's severe physical or mental impairments. Accordingly, the ALJ's RFC determination rests upon speculation, not evidence. "The disability determination or hearing decision must be set forth carefully. The rationale must reflect the sequential evaluation process; describe the weight attributed to the pertinent medical, nonmedical[,] and vocational factors in the case; and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations, and suppositions should not be substituted for evidence" (Social Security Ruling 86-8).

(Pl.'s Br. at 7-10 (emphasis added) (footnote omitted) (footnote inserted).)

The determination of a plaintiff's RFC is "the sole responsibility of the ALJ," and an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); 20 C.F.R. § 404.1520c(a). However, the Fifth Circuit, in *Ripley*, found that remand for additional administrative proceedings is necessary where the "record includes a vast amount of medical evidence establishing" that the claimant has an impairment but "does not clearly establish . . . the effect [the claimant's] condition had on his ability to work." *Ripley*, 67 F.3d at 557. "[A]n ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of [the claimant's] claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009). In other words, an "ALJ may not rely on his own unsupported opinion as to the limitations presented by the claimant's medical conditions." *Id.*

As noted above, the ALJ found that Weddle's anxiety and depression were severe impairments and accounted for such impairments in the mental RFC determination by finding that, "whether due to anxiety and/or depression or side effects from medications or treatment, she can

apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; can deal with problems involving a few concrete variables from standardized situations." (Tr. 28, 30.)  Later in the decision, however, the ALJ stated that "no treating or examining medical source has offered an opinion about the claimant's symptoms and their effects on the claimant's abilities to perform work activities, leaving the claimant's allegations uncorroborated."[6] (Tr. 31.)  The ALJ further noted that, "concerning the claimant's mental health conditions," Weddle "has not received any specialized care for them and that none of [Weddle's] exams noted issues with her mental status." (Tr. 31.)  Regarding the medical opinions, the ALJ explained:

> [T]he undersigned cannot defer or give specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.  The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: the undersigned has considered the assessments of the State agency consultants, as set out in Exhibits 2A[7] and 4A[,][8] and find them not generally persuasive, as they are not consistent with the overall record, as developed at the hearing level, and the record shows more restrictions and limitations than are found by the State agency consultants.

(Tr. 31-32.)

In this case, Weddle testified in the hearing before the ALJ that she had anxiety and depression and that she tried to take antidepressants, but she was later advised to stop taking them

---

[6] The Court notes that it is unclear exactly which impairments the ALJ was referring to in making this statement.  Consequently, the Court will assume it applies to Weddle's physical and mental impairments.

[7] In this August 22, 2019 Disability Determination Explanation (Initial Level), State Agency Medical Consultant Laurence Ligon, M.D. ("SAMC Ligon"), opined that Weddle had severe impairments of immune deficiency disorders and emphysema but that such impairments "do no[t] result in a finding of disability." (Tr. 78; *see* Tr. 74-81.)  SAMC Ligon further opined that Weddle could (1) occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; (2) sit, stand, or walk about six hours in an eight-hour day; and (3) had the unlimited ability to push and/or pull. (Tr. 78-79.)

[8] In this December 11, 2019 Disability Determination Explanation (Reconsideration Level), State Agency Medical Consultant Yondell Moore, M.D. ("SAMC Moore") opined that Weddle did not have an individual or combination of impairments that was severe. (Tr. 88; *see* Tr. 83-90.)

14

when she was diagnosed with serotonin syndrome. (Tr. 64-65.) Based on this and other information in the record, the ALJ found that Weddle suffered from severe mental impairments. (Tr. 28-32.) After making this determination, the ALJ noted that the record did not include any evidence or medical opinions regarding the effect of Weddle's conditions on her ability to work and found the SAMC's opinions, which either only provided a physical RFC assessment or found that Weddle did not have any severe impairments, as unpersuasive. (Tr. 32.)

Instead of obtaining information regarding the effects of Weddle's severe mental impairments on her ability to work, including by possibly seeking a consultative examination from a medical provider, the ALJ appears to have relied upon her own unsupported opinion in formulating the limitations in Weddle's mental RFC determination. *See, e.g.*, 20 C.F.R. § 404.1512(b)(2). This is prohibited by *Ripley, supra*, as an ALJ cannot rely on her own unsupported opinion as to the limitations presented by the claimant's medical conditions. Weddle was prejudiced by such failure because, without such evidence, the ALJ lacked information to correctly formulate Weddle's mental RFC determination. While the Court is not suggesting that Weddle will ultimately be successful in her quest for DIB, the ALJ erred in not obtaining a medical opinion regarding the effect of Weddle's anxiety and depressive disorders on Weddle's ability to perform work activities prior to making a mental RFC determination. Consequently, remand is required on this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

.

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 12, 2022** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 28, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv